In the Matter of the Application of the BOARD OF WATER
   SUPPLY OF THE CITY OF NEW YORK, Pursuant to Section
   42, Chapter 724 of the Laws of 1905, as Amended by
   Section 9, Chapter 314 of the Laws of 1906.

BUSINESS DAMAGE COMMISSION No. 3.

FREDERICK HAPPY, Claimant, Respondent; THE CITY OF NEW
                    YORK, Appellant.

Third Department, November 28, 1917.

Municipal corporations — city of New York — purpose of statute
   awarding damages for lands taken for water supply — damages
   to owner of woodland resulting from taking of mill.

The purpose of section 42 of chapter 724 of the Laws of 1905, as amended
   by chapter 314 of the Laws of 1906, providing compensation to persons
   whose business was injured by the taking of lands for the Ashokan reservoir,
   was not to award mere theoretical damages based upon mental ingenuity,
   but contemplated paying for losses to an established and going business
   which could be determined with some reasonable degree of certainty.

Where an owner of 900 acres of woodland, located on the opposite side
   of a mountain from the Ashokan reservoir, claimed consequential damages
   because of the taking of a mill upon the watershed of the reservoir
   which afforded a nearer market than others, and claimed that his business
   was affected by the loss of said market and the increased cost of trans-
   portation, but it appeared that during the fourteen years preceding the
   trial said mill purchased timber or wood of the claimant only to the value
   of $182.30, and there is no evidence that other mills do not pay enough
   in excess of the prices paid by the mill taken to compensate for the
   extra cost in hauling, an award of $2,000 is excessive.

APPEAL by The City of New York from an order of the
Supreme Court, made at the Ulster Special Term and entered
in the office of the clerk of the county of Ulster on the 16th
day of September, 1915, affirming the third separate report
and award of Business Damage Commission No. 3, in so
far as it affects the claimant.

An appeal is also taken from the said third separate report
and award of Business Damage Commission No. 3.

*Lamar Hardy, Corporation Counsel [William McM. Speer*
of counsel], for the appellant.

*A. T. Clearwater [Charles W. Walton* of counsel], for the
respondent.

WOODWARD, J.:

Section 42 of chapter 724 of the Laws of 1905, as amended by chapter 314 of the Laws of 1906, undertook to provide for the payment of compensation to persons whose business was injured by reason of the taking of lands and other property rights for the purpose of a water supply for the city of New York. It is said that a one-time famous English jurist asserted that there was a presumption that the plaintiff in an action was entitled to some relief, and the Business Damage Commission appears to have acted upon this presumption, with some degree of generosity as to the amount. The claimant was the owner of 900 acres of woodland in the town of Woodstock, Ulster county. This woodland was located on the opposite side of Wittenburg Mountain from the Askokan reservoir, the work out of which this alleged claim arises, and the consequential damages claimed grow out of the fact that the Boiceville mill, upon the watershed of the reservoir, was taken. The claimant had a sawmill upon his own premises, and his claim is that the Boiceville mill afforded a nearer market than others, and that his business was affected by the loss of this market; that the increased cost of transportation was against him, and the Commission has made an award of $2,000.

When it is considered that the undisputed evidence shows that during the fourteen years preceding the trial the Boiceville mill purchased timber or wood of the claimant to the amount of $182.30, this award of $2,000 cannot be otherwise than excessive. It does not appear clearly just what timber the Boiceville mill would be likely to need, but it must be entirely evident that if any great amount was needed the ultimate market would not be Boiceville, and the Boiceville market would be controlled by the cost of transportation to the ultimate market, so that the alleged loss of a better market, or a more available one, is highly speculative. The purpose of the statute was not to award mere theoretical damages, based upon mental ingenuity, but contemplated paying for losses to an established and going business which could be determined with some reasonable degree of certainty. For instance, if the claimant's mill had been taken, and the community in which it was located had been required to

vacate the watershed, so that the business, as well as the physical value of the property, had been destroyed, there would be justice in allowing a claim for the loss of the business. Or, if his mill had not been taken, but the construction of the reservoir made it necessary for people to move away so far that other mills were more available to them, so that the business would be conducted at a disadvantage, there would be room for awarding damages, but here it is not shown that the claimant's business would be affected in any substantial manner. The fact that a mill on the opposite side of a mountain, which in an economic sense may be more remote than places a dozen miles away on the State road, has been taken is certainly remote, and when the fact is known that this mill has never afforded any business of consequence to the claimant surely no award such as is here under consideration should be based upon mere expert opinion.

The Commission, in its opinion, says: " Special damage in this case is shown by the taking of the mill at Boiceville. The uncontradicted expert evidence of damage is based upon the additional cost of hauling to other mills claimant's oak, ash, poplar and basswood. A conservative estimate indicates damages of $2,000." But can a man be said to be damaged by the fact that it costs him more to deliver his product at one mill than it would at another, when it is not shown that that other would ever become a purchaser? The evidence here is that in a period of fourteen years the Boiceville mill has taken less than $200 worth of the claimant's timber; he had no real business relations with the Boiceville mill, and the alleged damages are based upon the proposition that it costs more to deliver the lumber at other mills than at Boiceville. There is no evidence that these other mills do not pay enough in excess of the Boiceville mill's prices to compensate for the extra cost in hauling, and the fact that the claimant has heretofore sold his product almost wholly to other persons would seem to suggest that there has been an advantage in this. People do not usually go on selling their products for a period of fourteen years in the least advantageous market in their immediate locality, and we are persuaded that there is here no sufficient foundation for such an award as has been made. The damages in a situation of this kind could hardly

be more than nominal, and here we have an award of two-fifths of the purchase price of the property of the claimant. Of course, the fact that the property has appreciated in price since it came to the ownership of the claimant would not operate to prevent his claiming damages to his business if such damages were shown, but in the absence of tangible evidence that the claimant's business has suffered by reason of the taking of the Boiceville mill, we think it is an abuse of the discretion vested in the Commission to make the award here under consideration, and that the order of the court in confirming the award cannot be sustained.

The order appealed from should be reversed and the claim remitted to the Commission to take action in harmony with this opinion.

All concurred.

Order reversed and claim remitted to the Commission to take action in harmony with the opinion.